**Patricia J. CUYOS, et al.**

v.

**TEXAS MOBILE HEALTH INC., et al.**

**Civil Action No. G–98–145.**

United States District Court,
S.D. Texas,
Galveston Division.

July 8, 1998.

John Richard Millard, Law Office of John R. Millard, Houston, TX, for Patricia J. Cuyos and Conrad P. Cuyos, Sr.

Joseph R. Alexander, Jr., Hanen Alexander Johnson and Spalding, Houston, TX, for Ralph S. Sharman.

Daniel K. Craddock, Stumpf Falgout Craddock & Massey, Houston, TX, for Texas Mobil Health Inc.

Ervin A. Apffel, Jr., McLeod Alexander Powel & Apffel, PC, Galveston, TX, for Janice Kelly Smith.

William Brad Howard, Office of U.S. Attorney, Houston, TX, for Galveston County Health District, U.S. and Galveston County 4 C's Clinic.

Halley Wallingford Ortiz, Office of Attorney General, Austin, TX, for State of Texas, University of Texas System and University of Texas Medical Branch Galveston.

## ORDER

KENT, District Judge.

This multiple party case was originally filed in the 122nd Judicial District Court of Galveston County, Texas. On March 17, 1998, the case was removed to this Court and as part of routine, initial docket control measures, an Order was entered on that date setting this case for a Rule 16 scheduling conference at 10:20 A.M., July 2, 1998. Subsequent to the setting of such, the parties met for a Rule 26 conference, and a Report of Meeting and Joint Discovery/Case Management Plan was filed, executed by all counsel, on June 22, 1998. Attorney Russ W. Harris, Assistant Attorney General of the State of Texas, and representing the State of Texas, participated in such conference, and signed the stated submission. At 10:20 A.M., on July 2, 1998, the long-set Rule 16 scheduling conference went forward. All counsel, representing numerous parties, were in attendance save and except Assistant Attorney General Russ W. Harris. The Court inquired as to all attending counsel who had been actually handling this case for the State of Texas, inasmuch as this Court's docket sheet still reflects that a "Halley Wallingford Ortiz" is listed as the attorney-in-charge for that party. All of counsel reported to the Court, in open court, that they had never talked to Attorney Ortiz, but only to Attorney Russ Harris. All attending confirmed that Mr. Harris had been at the Rule 26 conference, and that the Rule 16 scheduling hearing had been discussed, at that time. Presumably, inasmuch as all of the attending attorneys were familiar with the scheduling thereof, and it was openly discussed, the attending attorneys assumed that Mr. Harris knew of it, as well.

Not wanting to inconvenience all of the numerous other attorneys who had come to attend the conference, many being from out of town, the Court elected to proceed with the Rule 16 scheduling conference, and to issue its standard fine of $250.00 for failure of counsel to appear. At the time, and pending clarification, the Court assessed such fine jointly and severally against Attorney Ortiz and Attorney Harris, which Mr. Harris construes as $125.00 per attorney. The Court then again directed its Case Manager to contact the office of Attorney Harris, to inform him of the Court's decision, and to instruct payment of such joint and several fine within ten (10) days, failing which said attorneys would be subject to further sanctions.

In response thereto, Attorney Russ W. Harris wrote to this Court, dated July 6, 1998. In such letter, Attorney Harris avers that Attorney Ortiz left the employment of the Attorney General of the State of Texas in early March, 1998, and that a Notice of Substitution of himself in Attorney Ortiz's place was filed with the District Clerk of the 122nd Judicial District Court of Galveston County, Texas, prior to this matter's removal to this Court. He claims that due solely to the error of the State District Clerk, such substitution was not noted in transmittal of this

case to the Federal Court. However, he offers absolutely no explanation as to why he did not take it upon himself to insure that he had filed a Notice of Appearance with this Court upon its removal, or otherwise insured that he was participating in this case. Moreover, he offers no rebuttal whatsoever to the suggestion that he attended the Rule 26 conference in early June, 1998, that he signed the Case Management Report submitted by all counsel on June 22, 1998, or that he was personally aware of this setting, such having been ubiquitously discussed during that conference.

Indeed, Attorney Harris simply indicates that he failed to appear before this Court as a result of "simply a breakdown in communication and scheduling procedure" in his own office. As he eloquently states: "Simply put, this hearing was not properly calendared." On the basis of such representations, Attorney Harris requests that the Court vacate its fine against Attorney Ortiz, and likewise that the Court vacate or mitigate its fine assessed against him.

The Court wholeheartedly agrees that any sanction assessed against Attorney Ortiz is manifestly unfair. Attorney Ortiz left the employment of the Attorney General of the State of Texas in March, 1998, and has not been affiliated with that office or participating in this case as an acting attorney for several months. Indeed, a formal pleading was submitted before the matter was removed, relieving her of all obligations in the case. It would work an injustice upon her to assess any penalty for her failure to participate in a case in which she is no longer practicing. Consequently, the Court is pleased to **VACATE** the sanction assessed against Attorney Halley Wallingford Ortiz, **ONLY,** and any docket entry purporting to record such a sanction is hereby **STRICKEN FROM THE RECORD.**

■■■ Unfortunately, the Court perceives Attorney Harris' conduct in a manifestly different light. The Court readily acknowledges that inadvertent mistakes occur from time to time, in every attorney's office, and the Court appreciates Mr. Harris' candor in conceding one here. However, neither as an attorney, nor as a sitting federal judge has this Court *ever* blamed mistakes upon its staff, or a court clerk. The staff of an attor-

ney work for that attorney. They take their direction from and assume their responsibilities by, for and through that attorney. In the last instance, such attorney is *always* responsible for the conduct of his staff, and to seek to displace blame from himself to his staff is craven and unprofessional. Equally, whether the State District Clerk made an error is irrelevant. Mr. Harris had an affirmative obligation to insure that he was here properly enrolled as counsel. Moreover, Mr. Harris' failure to attend, while being the first instance in his own regard, occurs against a backdrop of similar conduct by numerous Assistant Attorney Generals throughout this Court's tenure upon this bench. It has been a point of longstanding exasperation with this Court that the Office of the Attorney General of the State of Texas is often the weakest link in the litigation chain, rather than being one of the strongest. As legal representatives of the enormous population of the entire and great State of Texas, the Attorney General's office should be a bastian of integrity, competence and professionalism. Unfortunately, it is frequently the sight of bumbling, whining incompetence. That conduct is flatly unacceptable to this Court, both in general, and in the particulars of this case.

Rule 16(f) provides for the imposition of various sanctions for violations of scheduling and other pretrial Orders of this Court. That Rule states:

> (f) Sanctions. If a party or party's attorney fails to obey a scheduling or pretrial order, *or if no appearance is made on behalf of a party at a scheduling or pretrial conference,* or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or his own initiative, may make such orders with regard thereto as are just and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D).

FED.R.CIV.P. 16(f) (emphasis added). Rule 16 merely makes explicit this Court's discretionary power to control the expeditious disposition of docketed cases; this power has long been recognized by appellate courts. *See, e.g., Link v. Wabash R. Co.,* 370 U.S. 626, 629–30, 82 S.Ct. 1386, 1388, 8 L.Ed.2d

734 (1962) ("The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts."). As noted above, this Court has had a standing practice during its entire, almost eight-year tenure on this bench, of assessing a fine of $250.00 against attorneys who fail to appear. This is a frankly trivial amount, in the modern environment of enormous legal salaries, and is calculated to be nothing more than a wrist-slap, to get the attention of the offending counsel. In this case, taking cognizance of the reality that Assistant Attorney Generals are frequently paid considerably less than their counterparts in the private sector, and not wanting to be unduly harsh, the Court will MITIGATE the gross fine in this case to $100.00, to be paid solely by Attorney Russ W. Harris. Such fine will be paid within ten (10) days of this Order, by means of a certified check made payable to the United States District Clerk, and shall be tendered to Ms. Marrianne Gore, Deputy–in–Charge, of this Court's Clerk's office. SHOULD SUCH FINE NOT BE TIMELY PAID, ATTORNEY RUSS W. HARRIS WILL BE CITED FOR CIVIL CONTEMPT, AND WILL BE SUBJECTED TO CONSIDERABLE DAILY FINES OR INCARCERATION, UNTIL SUCH FINE IS PAID.

Concurrently, Attorney Harris is hereby **ORDERED** to immediately submit, in writing, a Notice of Substitution of himself as attorney-in-charge for the State of Texas, and he will hereafter make necessary communications with co-counsel and the Clerk's office, to insure that he is timely in attendance at all further proceedings before this Court. This is no more and no less than this Court expects from every attorney who practices in this Court. To expect common sense, threshold competence and an appropriate sense of professional obligation is not too much to ask of any attorney, and certainly not one representing the legal interests of every single citizen who resides within this great State.

**IT IS SO ORDERED.**